IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| WILLIAM GILLERLAIN, | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION NO.: 07-00351-KD-M |
| CSX TRANSPORTATION, INC., et al., | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

This matter is before the Court on the following: defendant CSX Transportation

Inc.'s ("CSXT") motion for summary judgment (doc. 43); defendant United

Transportation Union's ("UTU") motion for summary judgment (doc. 47); plaintiff's

combined response in opposition (doc. 51); CSXT's reply to plaintiff's opposition brief

(doc. 52) and UTU's reply to plaintiff's opposition brief (doc. 53).  The motions have

been fully briefed and are now ripe for the Court's consideration.

I.    Background

Plaintiff filed the instant complaint on May 16, 2007 against his former employer

CSXT and his representative union, UTU, pursuant to 29 U.S.C. §185[1].  Defendants

---

[1] Section 185, entitled "Suits by and against labor organizations" provides, in part:

Suits for violation of contracts between an employer and a labor organization
representing employees in an industry affecting commerce as defined in this
chapter, or between any such labor organizations, may be brought in any district

moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that

plaintiff, who was a railway employee, failed to state a claim for relief under 29 U.S.C.

§185 as it expressly excludes workers whose claims are governed by the Railway Labor

Act.[2]  Plaintiff conceded that his claims were not governed by the federal statute cited in

his complaint but urged the Court to allow him a reasonable opportunity to amend.  The

request was granted and plaintiff filed an amended complaint on October 12, 2007.

The amended complaint is brought pursuant to the Railway Labor Act ("RLA"),

45 U.S.C. § 152, *et seq.,* alleges, in sum, that defendant CSXT violated the Collective

Bargaining Agreement between CSXT and UTU when it terminated plaintiff's

employment.  Plaintiff further alleges that UTU failed to fairly represent plaintiff and

engaged in bad faith conduct in dealing with plaintiff and his termination.  Specifically,

plaintiff alleges that UTU's conduct "constitutes bad faith, was malicious toward the

Plaintiff, was deceitful, arbitrary and was a perfunctory disregard for its union member's

interest."   (doc. 26, ¶ 8)

II.     Findings of Fact [3]

---

court of the United States having jurisdiction of the parties, without respect to the
amount in controversy or without regard to the citizenship of the parties.

[2]  See 29 U.S.C. § 152.

[3]  When ruling on a motion for summary judgment, the court views "the evidence and all
reasonable inferences in the light most favorable to the non-moving party."  Battle v. Board of
Regents for Ga., 468 F.3d 755, 759 (11th Cir .2006).  While the Court is mindful of its duty, it is
tempered by the fact that plaintiff did not offer his own factual background, nor did he contest
the facts as submitted by defendants.
        Local Rule 7.2 provides, any material factual disputes shall be pointed out in the

*The Parties*

Plaintiff was hired by CSXT as a conductor in May 2001.  At the time of the incident made the basis of this action, plaintiff had been employed by CSXT for approximately four and one half years.  The UTU represents employees in the craft or class of trainmen, which includes conductors.  Plaintiff was represented by UTU throughout his employment with CSXT.

*The Incident*

On December 12, 2005, plaintiff was called by the Crew Management Caller ("CMC") to work what he was initially told would be a one day train assignment out of Pascagoula, Mississippi.  CSXT concedes that the CMC erred in calling plaintiff for only one day, as he should have been called to cover the entire week.  At the end of plaintiff's shift Trainmaster Melvin Murray approached plaintiff and informed him that CMC had made an error and that plaintiff was to fill the vacancy for the rest of the week.  Plaintiff acknowledged the error and agreed to fill the vacancy for the week as per the work rule.

---

opposition brief and referenced to supporting documents and that the "[f]ailure to do so will be considered an admission that no material factual dispute exists." See also  Patton v. City of Hapeville, Ga.,162 Fed.Appx. 895, 896 (11ᵗʰ Cir. 2006) ("[T]he district court properly held that the defendants' statement of undisputed facts filed with their motion for summary judgment were admitted when Patton failed to respond to the statement of facts in accordance with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Northern District of Georgia."); Galloway v. GA Technology Authority, 182 Fed. Appx. 877 (11th Cir. 2006) (affirming summary judgment  where the non-movant failed to cite to any evidence).  The factual background herein is taken from the defendants' briefs, however, in analyzing the motions for summary judgment, the Court has taken those facts in the light most favorable to plaintiff. See Miller v. King, 384 F.3d at 1258-59.

Trainmaster Murray informed plaintiff that he would correct the matter with CMC.

Plaintiff returned to Mobile and did not return to Pascagoula the following morning.  When he did not report for work in Pascagoula the next day, the carrier issued a Notice of Investigation charging plaintiff with insubordination in failing to follow directions.  Plaintiff maintains that his actions were justified because despite Mr. Murray's instructions, CSXT's crew management system did not reflect that he was assigned to the job for the entire week.

*The Investigation*

Pursuant to the terms of the collective bargaining agreement, plaintiff was notified of the charges and instructed by CSXT to attend a formal investigative hearing regarding the incident on January 11, 2006.  The day prior to the investigation, plaintiff  wrote a letter to CSXT's Division Manager Workman  explaining his verison of the events.[4]  In the letter plaintiff accuses Trainmaster Murray of "abusing his authority" and being "arrogant," "vindictive," and malfeasant and of harassing and intimidating him.  At the January 11, 2006, on-property hearing, plaintiff was represented UTU's Local Chairman Steve Carnathan.  During the hearing Mr. Carnathan examined and cross-examined witnesses, and probed the carrier's evidence and assertions. Plaintiff was also given the opportunity to question witnesses and testify on his own behalf.  Plaintiff was determined

---

[4] Defendants have included in their evidentiary submissions a copy of a letter from plaintiff to  CSXT dated January 10, 2006 wherein plaintiff states that while Murray told him he would correct the matter with CMC, when he check the board upon his arrival back in Mobile he was at the bottom of the board and "would not stand for the LM72313."  (Doc. 47, Exhibit 3)

guilty of the charges and was terminated from service effective February 7, 2006.  Upon receiving the termination notification, plaintiff called UTU Assistant General Chairperson Barry Hogan along with Mr. Carnathan who informed him of the appeal process and timing requirements.  At plaintiff's request, UTU appealed the termination.   On February 21, 2006, Mr. Carnathan sent a letter to CSXT Division Manager, Rod Workman, formally appealing plaintiff's termination.

On May 4, 2006, UTU General Chairman Rufus McIntyre[5] moved the grievance to the next step and listed it for a conference on June 5, 2006 with CSXT Director of Labor Relations, Steve Friedman.  At the conference, Mr. McIntyre was able to persuade Mr. Friedman to consider returning plaintiff to work with the right for him to appeal the back pay issue.  Shortly thereafter, Mr. Carnathan called plaintiff to apprise him of the impending offer from CSXT which would allow plaintiff to return to work with some conditions.  The formal offer by CSXT was not extended until August 17, 2006, when plaintiff was summoned to a meeting with CSXT personnel.  At the meeting, CSXT offered to return plaintiff to work without back pay and to place him on two years probation.  Plaintiff rejected the offer.  After the meeting, Assistant General Chairman Hogan conducted a conference call with plaintiff, Mr. McIntyre, and Mr. Carnathan.  After discussing the matter, plaintiff asked that his case proceed to arbitration.  Mr. McIntyre informed plaintiff that a number of cases were ahead of his and that it would

---

[5] When the matter could not be resolved locally, it was referred to the union's general chairman.

probably be near the end of the year before his could be heard by the Public Law Board ("PLB")  Later that same day, plaintiff posted comments on the website "CSXT Sucks" regarding the August 17 meeting with CSXT.  The posting recounted plaintiff's  version of the events and attached the January 11 letter he sent to Director Workman.

Plaintiff called Mr. Hogan on October 1, 2006, to inquire about the status of the arbitration at which time plaintiff  again voiced his rejection of the settlement offer by CSXT.  On October 26, 2006, Director Friedman issued his final written denial of plaintiff's claim, specifically referencing plaintiff's January 11, 2006 letter from plaintiff admitting that he understood that he was to be in Pascagoula for the entire week.  The denial also  recounted the other evidence against plaintiff, including three witnesses who verified Trainmaster Murray's testimony.  Finally, in discussing the offer to return, Director Friedman noted plaintiff's August 17, 2006 web posting and his behavior at the August 17, 2006 meeting concluding that the CSXT's offer to return plaintiff to work was a mistake and was now off the table.

*Arbitration*

The arbitration hearing was conducted on November 16, 2006.[6]  UTU submitted various exhibits, argued various points and cited to various rules in urging plaintiff's reinstatement.  CSXT submitted a brief and introduced a copy of plaintiff's August 17, 2006 posting on the CSX-Sucks.com web site.  On March 19, 2007, the arbitrator issued

---

[6] Plaintiff contends that he was not notified of the arbitration hearing in advance but concedes that he agrees with all the arguments made by UTU on his behalf at the hearing.

the award upholding plaintiff's dismissal finding that he understood and accepted the week's assignment and that in failing to return to work the following day he was guilty of the charge.  Plaintiff was sent the Award one day later on March 20, 2007.  Plaintiff filed the instant law suit on May 16, 2007.

III.     Summary Judgment Standard

Summary judgment should be granted only if "there is no genuine issue as to any material fact and [ ] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[7]  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

---

[7] Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992), cert. denied, 507 U.S. 911, 113 S. Ct. 1259, 122 L. Ed. 2d 657 (1993) (internal citations and quotations omitted). The mere existence of any factual dispute, however, will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of the Dep't of Children & Family Serv., 358 F.3d 804, 809 (11th Cir. 2004), cert. denied, 534 U.S. 1081, 125 S. Ct. 869, 160 L. Ed.2d 825 (2005).

IV.   Discussion

Plaintiff has brought suit against his employer and his union in what has been characterized as a "hybrid" claim. See Massey v. United Transp. Union, 868 F. Supp. 1385, 1388 (S.D. Ga. 1994), aff'd 65 F.3d 183 (11th Cir. 1995) [8] Plaintiff alleges that

---

[8] Typically, arbitration awards are not reviewable in federal court. However, where it is shown that the union breach its duty of representation to the employee, a remedy may be pursued in federal court against both the employer and the union. See Hines v. Anchor Motor Freight, 424 U.S. 554, 563-64, 96 S.Ct. 1048, 1055-56, 47 L.Ed.2d 231, 241 (1976). However, under Hines the employee may only seek relief against his employer and union if he demonstrates that his union has breached its duty. United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 61, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732, 739 (1981).

CSXT terminated him in violation of the collective bargaining agreement between CSXT and UTU.  Plaintiff further alleges UTU, in dealing with plaintiff's termination, "engaged in conduct...that constitutes bad faith, was malicious...deceitful, arbitrary and was a perfunctory disregard for [plaintiff's] interest."  (Doc. 26 at ¶¶ 7, 8)   The interplay between these two claims was succinctly set out by the Tenth Circuit Court of Appeals in Robertson v. Burlington Northern and Santa Fe Ry. Co., 216 Fed.Appx. 724 (10th Cir. 2007):

> It has long been recognized that the National Railroad Adjustment Board (NRAB) has exclusive jurisdiction under the Railway Labor Act to arbitrate employment related disputes between rail carriers and their employees. It is also "beyond cavil that a suit against the [rail employees'] union for breach of its duty of fair representation is not within the [NRAB's] jurisdiction." When interrelated claims of both types are present, they may be joined together in a single "hybrid" suit cognizable in federal court. In such a suit, given the NRAB's otherwise exclusive authority over employment disputes, "a viable duty-of-fair-representation claim against an employee's union is the jurisdictional predicate for a correlative claim against the employer." Thus, if the claim against the union fails, the claim against the employer fails as well.

216 F. Appx. at 726 (internal citations omitted)

*Breach of Duty of Fair Representation*

In order to establish that the union breached its duty of fair representation, plaintiff must show that the handling of his grievance was "arbitrary, discriminatory, or in bad faith." Airline  Pilots Assoc. Int'l v. O'Neill, 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991); Del Costello v. International Broth. Of Teamsters, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L. Ed. 2d 476 (1983) (A union who acts in a "discriminatory,

dishonest, arbitrary, or perfunctory fashion" may breach its duty of fair representation)

This may be accomplished upon a showing that the union ignored a meritorious grievance

or processed it in "perfunctory fashion." <u>Vaca v. Sipes</u>, 386 U.S. 171, 190-91, 87 S.Ct.

903, 916-17, 17 L. Ed. 2d 842 (1967) [9]; <u>Harris v. Schwerman Trucking Co.,</u> 668 F.2d

1204, 1206 (11th Cir.1982).  Union behavior is considered arbitrary "only if, in light of

the factual and legal landscape at the time of the union's actions, the union's behavior is so

far outside a 'wide range of reasonableness' "as to be irrational." <u>O'Neil</u>, 499 U.S. at 67,

111 S.Ct. at 1130 (citing <u>Ford Motor Co. v. Huffman</u>, 345 U.S. 330, 338, 73 S.Ct. 681,

686, 97 L.Ed. 1048 (1953)).

    In response to each defendant's motion for summary judgment [10] plaintiff argues,

generally that  "the acts and/or omissions of the Defendant UTU do in fact, when viewed

in a light most favorable to the Plaintiff, rise to the level of a breach of duty of fair

---

[9]  In <u>Vaca</u>, writing for the Court, Justice White opined, in part:

> The statutory duty of fair representation was developed over 20 years ago in a
> series of cases involving alleged racial discrimination by unions certified as
> exclusive bargaining representatives under the Railway Labor Act, and was soon
> extended to unions certified under the N.L.R.A.  Under this doctrine, the
> exclusive agent's statutory authority to represent all members of a designated unit
> includes a statutory obligation to serve the interests of all members without
> hostility or discrimination toward any, to exercise its discretion with complete
> good faith and honesty, and to avoid arbitrary conduct.

386 U.S. at 177 (internal citations omitted)

[10]  Plaintiff states that he agrees with the legal summary judgment standards and the
analysis applied to the Plaintiff's action arising under the Railway Labor Act ("RLA", "the Act",
45 U.S.C. § 152, et seq.)

representation.[11]  Plaintiff identifies the following in support of the breach of duty claim:

(1) UTU failed to provide plaintiff with notice of the arbitration hearing, and a copy of its

arbitration submission; (2) that the general chairman of UTU failed to properly exclude

prejudicial and extraneous documents (e.,g, plaintiff's CSXT-Sucks.com postings); that

CSXT and UTU engaged in "horse trading" regarding his grievance, and (4) that UTU

failed to provide Mr. Gillerlain with documents he requested.  In support, plaintiff cites

the court to portions of his deposition testimony.[12]

---

[11]  Plaintiff's entire argument consists of the following two paragraphs:

Unions breach the duty of fair representation when they act in a manner that is
"arbitrary, discriminatory, or in bad faith." Marquez v. Screen Actors Guild, Inc.,
525 U.S. 33, 44 (1998) (following Vaca v. Sipes, 386 U.S. 171, 177 (1967)). The
Plaintiff alleges that UTU failed to provide him with notice of the arbitration
hearing, and a copy of its arbitration submission. (Deposition of Plaintiff, 100:
17-22, previously submitted in defendants' motions); that the general chairman of
UTU failed to properly exclude prejudicial and extraneous documents (his
CSXT-Sucks.com postings) (Pl. Dep., 99:10-19); that CSXTT and UTU engaged
in "horse trading" regarding his grievance (Pl. Dep. 9:20-23); and finally that
UTU failed to provide Mr. Gillerlain with documents he requested. (Pl. Dep.,
100: 1-9.)

The Defendant CSXTT has not addressed the Plaintiff's allegations that it
breached the collective bargaining agreement in terminating his employment;
therefore, the Plaintiff's claims in this regard are not due to be dismissed.
Whether UTU's conduct constitutes bad faith, was malicious toward Mr.
Gillerlain, was deceitful, arbitrary and a perfunctory disregard for his interest as a
member is a question of fact.

[12]  Plaintiff does not submit any evidentiary material in his behalf but cites to portions of
his deposition submitted by defendant.  One of the pages cited by plaintiff (page 9) does not
appear to be in evidence however.  The deposition testimony relied upon only reiterates
plaintiff's argument and does not expound upon those bare allegations.  See Holifield v. Reno,
115 F.3d 1555, 1564 n. 6 (11th Cir.1997); Harris v. Ostrout, 65 F.3d 912 (11th Cir.1995).

*(1)      Failure to Notify of Arbitration Hearing*

Plaintiff first maintains that he was not notified of the arbitration hearing and he was not provided with a copy of the UTU's submission to the arbitrator. "A union does not breach its duty of fair representation simply by failing to give the grievant-member an opportunity to attend and notice of a particular segment of the grievance process." Higdon v. United Steelworkers of Higdon, AFL-CIO-CLC, 706 F.2d 1561, 1562 (11th Cir. 1983) citing Freeman v. O'Neal Steel, Inc., 609 F.2d 1123 (5th Cir.1980); Whitten v. Anchor Motor Freight, Inc., 521 F.2d 1335 (6th Cir.1975).

Assuming that plaintiff was not notified of the hearing, that fact alone does not rise to the level of a breach of duty of fair representation by UTU. Nor does the failure to provide plaintiff a copy of the written arguments submitted by UTU on his behalf, particularly in light of the fact that plaintiff concedes that he is in agreement with the arguments submitted on his behalf at the arbitration hearing.

*(2)      Failure to Exclude Extraneous Documents from Arbitration Hearing*

Plaintiff next argues that the union failed to exclude the admission of his CSX-Sucks.com postings from the arbitration hearing. This allegation is likewise insufficient to constitute a breach of duty by the union. It is well settled that unions are afforded a great deal of latitude in the  representation of employees.  Hines v. Anchor Motor Freight, 424 U.S. at 563-64.  Moreover, "[t]he grievance and arbitration process is not conducted

---

(If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant.)

in a judicial forum and union representatives are not held to strict standards of trial advocacy**."** <u>Harris v. Schwerman Trucking Co.</u>, 668 F.2d 1204, 1206 (11th Cir. 1982) (citations omitted).  There is no dispute that plaintiff made the posting.  Plaintiff does not deny the posting, only that it was improperly admitted at the hearing.[13]  The admission of such evidence at the arbitration hearing does not rise to the level necessary to establish a breach of duty of fair representation by the union.  <u>See also</u> <u>Moore v. Roadway Express, Inc. and Local 707</u>, 2008 WL 819049 *4 ( E.D.N.Y., March 25, 2008) quoting <u>Barr v. United Parcel Serv., Inc</u>., 868 F.2d 36, 43 (2nd Cir.1989)( "Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.")

    *(3)    Allegations of "horse trading"*

    Plaintiff next maintains that CSXT and UTU engaged in "horse trading."[14] Plaintiff offers no support for this speculative statement other than he "believe[d] there was a possibility of it". (Doc. 46, Exhibit 1- Deposition of William Gillerlain, p. 99) Plaintiff's conclusory allegations are insufficient to create a genuine issue of material fact.  <u>See</u> <u>Harris v. Ostrout</u>, 65 F.3d 912, 916 (11th Cir.1995) (If the non-movant's response consists of nothing more than conclusory allegations, the court must enter

---

    [13]  UTU argues that plaintiff is only speculating that the evidence was admitted at the arbitration hearing since plaintiff was not present during the proceeding.  Rather, UTU contends that the information, if presented at all, was contained in the final denial issued prior to the arbitration hearing and was brought to the attention of the arbitrator in that fashion.

    [14]  Webster's Dictionary defines "horse-trading" as "negotiation accompanied by shrewd bargaining and reciprocal concessions."

summary judgment for the movant.)

(4)     Failure to Provide Requested Documents

Plaintiff also maintains that the union failed to provide him with requested documents.  On May 13, 2006 plaintiff sent an e-mail to Barry Hogan requesting that he provide plaintiff with "copies of all correspondence with CSX in this matter."  (Doc. 47, Exhibit 17)  Plaintiff contends that despite his request, he never received the information.[15]  While the failure to provide the correspondence *may* constitute negligence, it does not rise to the level of breach of duty of fair representation.  See  Harris v. Schwerman Trucking Company, 668 F.2d at 1206 (negligence does not constitute a breach of the duty of fair representation); Landry v. The Cooper/T.Smith Stevedoring Co., 880 F.2d 846, 852 (5th Cir.1989) (citing Vaca, 386 U.S. at 192-93, 87 S.Ct. at 918)("A union does not breach its duty of fair representation ... through simple negligence or a mistake in judgment.")

Finally, plaintiff also contends, generically,  that UTU "could have done things a little better than they did."  This allegation is vague, conclusory and fails to rise to the level of breach of duty of fair representation.   See Rasheed v. Int'l Paper Co., 826 F.Supp 1377, 1388 (S.D. Ala. 1993) (Plaintiff's allegation that the union could have done "a little better" in choosing arbitrator did not constitute breach of the duty of fair representation.);

---

[15]  Plaintiff maintains that he requested the information from Mr. Hogan on May 13, 2006 and again on June 8, 2006.  Plaintiff concedes that he did not know if that was the sort of information Mr. Hogan would provide.  (Doc. 46, Exhibit 1- Gillerlain Dep., p. 100)

14

Ellis v. England, 432 F.3d 1321, 1323-27 (11th Cir. 2005) (At the summary judgment stage, plaintiff cannot rest on speculation, conclusion, and mere allegation, but must come forward with specific evidence).

The record reflects (and plaintiff does not dispute) that the union represented plaintiff at each stage of the grievance process, including the administrative hearing and arbitration hearing.  The evidence further reflects that UTU argued for and obtained a settlement offer from CSXT which plaintiff rejected. Resolving all inferences in favor of plaintiff, the conduct of the union was not "so far outside a 'range of reasonableness' to be irrational.'" See O'Neill, 499 U.S. at 67.  Accordingly, this Court finds that UTU represented plaintiff in good faith and that there was no breach of the duty of fair representation.

As to defendant CSXT , plaintiff argues that it has not addressed the allegations that it breached the collective bargaining agreement in terminating his employment and thus summary judgment is improper.  As noted herein, in order to proceed against his employer on a claim for breach of the collective bargaining agreement plaintiff must first succeed on the breach of duty claim against his union.  As plaintiff failed to succeed on his breach of duty of fair representation claim the court need not reach his breach of contract claim against the employer. See  Rasheed, 826 F. Supp at 1387 citing Babcock & Wilcox, 726 F.2d 1562, 1564 (11th Cir. 1984) ("The employee's crucial burden in establishing that the union breached its duty of fair representation is substantial. If the employee cannot show that the union breached its duty (either for lack of evidence or because the union acted properly), then the employee will not be heard to complain

against the employer.")

V.      Conclusion

        In the final analysis, plaintiff has failed to show a genuine factual dispute with respect to

the grievance procedure and the Union's handling of his grievance to support his claim of breach

of duty of fair representation.  Thus, defendant UTU's motion to summary judgment is

**GRANTED.**   Since plaintiff's claim against his union fails, the claim for breach of contract

against is employer must likewise fail.  Accordingly, defendant, CSXT's motion for summary

judgment is **GRANTED.**

        DONE this the 24th day of July 2008.

                                                /s/ Kristi K. DuBose
                                                **KRISTI K. DuBOSE**
                                                **UNITED STATES DISTRICT JUDGE**